UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

MALINDA SIKES                          CIVIL ACTION NO. 08-cv-1969

VERSUS                                 JUDGE JAMES

LIFE INSURANCE CO. OF                  MAGISTRATE JUDGE HORNSBY
NORTH AMERICA

## REPORT AND RECOMMENDATION

**Introduction**

Malinda Sikes ("Plaintiff") was employed by Buffets, Inc. as the manager of a Ryan's restaurant in Ruston, Louisiana. She left her job in October 2007 and applied for both short-term disability ("STD") and long-term disability ("LTD") benefits under group benefit plans adopted and maintained by her employer. Plaintiff was approved for STD benefits through January 21, 2008, but both STD and LTD were denied after that date. Plaintiff pursued appeals provided for in the plans. She then filed this civil action pursuant to ERISA and prayed for a declaration that she is entitled to benefits.

The named defendant is Life Insurance Company of North America ("LINA"). Plaintiff and LINA stipulated to the contents of the administrative record and filed it with the court. Plaintiff then filed a Motion for Summary Judgment (Doc. 14) that has been fully briefed. LINA made an offer in its memorandum to resolve the litigation by agreeing to a remand for further evaluation of Plaintiff's LTD claim. Plaintiff did not respond to that offer

in her reply memorandum, so the court made inquiry.  Plaintiff's counsel rejected the proposed resolution.  Accordingly, the matter is now ripe for decision.

**Relevant Facts**

### A. Terms of the Plans

Plaintiff's complaint alleged that she "is a participant in an employer-sponsored plan that provides disability benefits."  Complaint, ¶ 4.  She alleged that she became disabled in October 2007 and that defendant LINA denied her disability benefits.  The complaint did not mention the separate claims for STD and LTD or indicate that there was more than one plan at issue.

The parties later filed a stipulation (Doc. 10) that the "plan" at issue is governed by ERISA.  LINA filed a copy of the administrative record (Doc. 11), and Plaintiff filed a notice (Doc. 12) to state that she was "unaware of any document that should be in the administrative record that is not included in the defendant's submission to the court."  The record contained a copy of an LTD plan but not a STD plan.

Plaintiff's motion for summary judgment asks the court to find that LINA abused its discretion in terminating STD and denying LTD.  Plaintiff did not cite to any provisions of either plan in the administrative record.  LINA's memorandum (Doc. 23) cited the LTD plan at pages 293-312 of the administrative record.  As noted, however, it appears that the STD plan was not included in the stipulated administrative record.  LINA attached to its memorandum what it represents is a copy of the applicable STD plan.

The STD plan provides that if a participant becomes disabled and remains so after a seven-day waiting period, the company (Buffets, Inc.) will pay the participant a percentage of her salary for up to 180 days.  The plan states that an employee is disabled if an injury, illness, pregnancy, or sickness limits the employee "from performing the material and substantial duties of their regular occupation or a position comparable to their regular occupation," the employee is under the regular care and attendance of a licensed medical provider, and the employee has a 20% or more reduction in their normal weekly scheduled hours due to the health condition.  The STD plan provides for two appeals if a claim for STD benefits is denied, and it provides that no legal action may be brought until both appeals have been pursued.

The LTD plan picks up where the STD plan ends. It provides for payment of a percentage of the employee's earnings after a 180-day waiting period.  The LTD plan provides that an employee is disabled if, because of injury or sickness, she is "unable to perform all the material duties of [her] regular occupation" or is unable to earn more than 80% of her covered earnings.  After benefits have been paid for 24 months, the employee is considered disabled if injury or sickness makes her "unable to perform all the material duties of any occupation for which [she] may reasonably become qualified based on education, training or experience" or if she is unable to earn more than 60% of her covered earnings. Tr. 305.  The plan states that it will pay benefits if the employee becomes disabled, as defined. The plan directs that after the employee is disabled, she must satisfy the waiting

period and be under the appropriate care of a physician (as defined by the plan).  The plan

adds:  "Also, we ask you to provide us with satisfactory proof of your Disability, at your

expense, before benefits will be paid."  The plan adds that "continued proof" of disability is

required for benefits to continue."  Tr. 296.

**B. STD Benefits; Temporary Grant**

Plaintiff applied for STD benefits based on a claim that she was disabled because of

cystitis.  Plaintiff submitted in support of her claim medical records and a letter from her

treating physician, Dr. Jay Busby.  Tr. 148-59.  The medical records reflected a number of

visits to Dr. Busby in 2007, primarily for treatment of chronic interstitial cystitis.  Dr. Busby

wrote in his letter that Plaintiff had been under his care since July 2004 and was diagnosed

with chronic interstitial cystitis, "a condition characterized by extreme and acute bladder and

urethral pain."  Busby recounted that he had treated Plaintiff with Mepergan but had recently

changed to Dilaudid when the Mepergan lost its effectiveness.  Dilaudid, he warned, is a

potent narcotic analgesic, and drowsiness is one of its side effects.  He concluded:  "Due to

the debilitating nature of the disease and the medication the patient must take to control the

pain, I have recommended that she apply for short-term disability and that she take a leave

of absence from her job."  Tr. 159.

LINA determined that Plaintiff had established disability and granted her STD

benefits beginning November 1, 2007 and ending January 21, 2008.  Tr. 32.  A registered

nurse who reviewed the medical information for LINA during the claim process wrote that

the information supported functional deficit through at least six weeks through January 21, 2008 "as evidenced by persistent bladder pain with dysuria and pyuria." The nurse noted that if Plaintiff had not returned to work by January 27, 2008, "please obtain updated OV [office visit] notes from Dr. Busby and to send MRF." Tr. 145.

There were apparently communications between Plaintiff and LINA as the approved period for STD benefits came to a close, but they are not well documented in the administrative record. The claims manager made an entry in the file dated February 7, 2008. She noted that Plaintiff was taking time off work and stated that the lack of stress made her feel somewhat improved. The claims manager noted that Plaintiff said she had a follow-up visit with her physician the next week, so a note was made to follow-up with Dr. Busby to see if Plaintiff was seen and if he could certify as to Plaintiff being off work and for how long. In her report, the claims manager wrote that "so far" Plaintiff had not scheduled a follow-up appointment. She then wrote:

> Will staff with NCM [nurse case manager] for possible denial. Based on recommendations there are no medical information in file that supports functional deficits beyond 01/21/08, no further clinical findings or f/u treatment was done after LOV [last office visit] on 12/11/07. Unclear of cx's [claimant's] condition that is preventing RTW [return to work]. At this time will deny claim. Send letter.

Tr. 255.

A February 13, 2008 note from the claim manager states that Plaintiff told her that she saw Dr. Busby on January 5, 2008 and had an appointment the week of the February 13, 2008. The claim manager called Dr. Busby's office and spoke with one of his staff members.

The staff member stated that they could certify disability for 2007 and that Dr. Busby told Plaintiff not to work, but Plaintiff had not been to see Dr. Busby since December 2007 and had no follow-up appointments scheduled at that time.  Tr. 61.

Registered nurse Jeanette Limqueco, the nurse case manager, issued a document titled Internal Resource Response dated February 15, 2008.  She described Plaintiff's diagnosis and wrote that she had reviewed the medical information in the file, which consisted of the office visit notes.  The nurse summarized Plaintiff's medical records and noted Dr. Busby's recommendation for a leave of absence "with no time frame" back in October 2007.  She noted that there were no further clinical findings or follow-up treatment done after the last office visit on December 11, 2007, so it was: "Unclear as to clmt's current functionality and unclear as to clmt's current severity of clmt's condition that is preventing RTW."  She also wrote: "Review of medical information in file does not support functional deficits beyond 01/21/08, paid thru date."  Tr. 258-59.

LINA claims manager Kendra James issued a letter on February 25, 2008 that denied STD benefits beyond January 21, 2008.  The letter stated that there were no clinical findings or follow-up treatment after December 11, 2007, and it was unclear as to whether Plaintiff's current functionality and the severity of her condition prevented her from returning to work. The STD plan submitted by LINA states that a written request for a first appeal must be made within 60 days after receiving written notice of denial, but the letter LINA sent to Plaintiff told her she had 180 days to appeal.  Tr. 128-29.

### C. First Appeal of STD Denial

Plaintiff, by letter dated April 8, 2008, filed an appeal of the denial of her STD claim. The appeal fell within the 60-day deadline stated in the plan. She attached a "summary of treatment" letter from Dr. Busby.  She also argued that she had held her management job for 12 years, during which time several procedures had been tried to address her medical problems that were diagnosed in 2003.  Plaintiff noted that she had undergone the procedures on her personal time without ever making a claim on her disability insurance.  Tr. 124-25.

The summary by Dr. Busby was dated March 27, 2008 and gave a history of his treatment of Plaintiff, beginning with the first visit in July 2004.  Plaintiff had reported a 2003 diagnosis of chronic interstitial cystitis by another physician.  Plaintiff had undergone medical treatment as well as hydrodilation without relief of her symptoms.  A urethral sling procedure for stress urinary incontinence improved but did not eliminate the condition. Plaintiff had been treated with both Heparin and Lidocaine injections into the bladder, and she had been given this "rescue solution" to be given at home.

Dr. Busby wrote that Plaintiff's "very painful symptoms" had progressed to the point that she required large quantities of Mepergan Fortis for control of the pain.  He said that the condition and associated chronic pelvic pain "is a permanent one and its prognosis is very dismal."  He said that a bladder removal, inquired about by Plaintiff, would not be of benefit. Only one medication, Elmiron, is approved for its treatment.  Plaintiff tried the medication, but it was ineffective, and she eventually could not take it anyway.  Plaintiff's pain,

Dr. Busby reported, was controlled only by increasing dosages of narcotic analgesics, which "severely limit the patient's ability to perform meaningful tasks." He said that Plaintiff was "not responding well to any treatment solutions which are currently available to her," and there was nothing more he could do to treat her except increase the amounts of medication. Tr. 126-27.

LINA contacted Plaintiff to acknowledge her appeal and to advise that it would be managed by Scott Hornung. Plaintiff was given the opportunity to provide any additional relevant information. Tr. 120-21. Mr. Hornung wrote in May and June 2008 to say that LINA was still in the process of reviewing the medical information in the file. Tr. 118-19. He then issued a decision dated July 28, 2008 that reaffirmed the original denial of STD benefits. The decision reasoned that there was no clinical support for Plaintiff's functional capacity and how it prevented her from continuously performing her material duties beyond January 21, 2008. Mr. Hornung addressed the evidence submitted on appeal as follows:

> I am aware that you have been off work since October 25, 2007 due to chronic interstitial cystitis/chronic pelvic pain. As part of your appeal, you submitted a summary of treatment from Dr. Busby dated March 27, 2008. Please note that this is two months after your Short Term Disability benefits ended and does not provide evidence of functional deficits going back to January 21, 2008.

The STD plan attached to LINA's brief provides that 60 days is allowed for a second appeal of STD denial, but Mr. Hornung's letter stated that Plaintiff could request review within 180 days of her receipt of the denial letter. Tr. 116-17.

**D. LTD Application Denied**

A letter from LINA in November 2008 acknowledged that Plaintiff had applied by telephone for LTD benefits.  LINA stated that it would "do everything possible to assist" in that claim process, and it began by requesting additional medical information from Dr. Busby.  Tr. 100-01.  Just one week later, however, LINA issued a letter that denied the LTD claim.  LINA stated that it reviewed the February 25 STD denial from Kendra James and the July 28 first-appeal decision from Scott Hornung.  LINA noted that the file did not document an appeal beyond Hornung's decision.  LINA stated that it was unable to consider a claim for LTD benefits because it had been determined that the medical records submitted thus far did not establish disability beyond January 21, 2008.  Plaintiff was advised of her right to appeal the LTD decision.  Tr. 98-99.

**E. Second Appeal of STD Denial**

Plaintiff retained counsel, and he sent separate letters regarding the STD and LTD claims.  Both were dated December 1, 2008 and addressed to Mr. Hornung.  One letter addressed Hornung's February 25, 2008 denial of the STD claim.  More than the 60 days permitted by the STD plan for the second appeal had passed by then, but it was still within the 180-day period that Mr. Hornung had written was allowed for a second appeal.  Counsel wrote that Plaintiff "requests review of your earlier decision," and he submitted a more current statement from Dr. Busby dated November 25, 2008.  Tr. 114.

Dr. Busby's report recounted that he had observed Plaintiff for more than four years, during which "her condition appears to have deteriorated."  Dr. Busby explained that Plaintiff's medical condition was not well understood as to its etiology or treatment, and the last seminar he attended on the topic left him with a conclusion that there was no treatment thought to be universally effective.  He then stated:

> In my opinion, [Plaintiff] was medically unable to work on October 25, 2007 and I do not believe that she is capable of holding a job of any kind at the present time and since her condition dramatically worsened on October 25, 2007.  [Plaintiff] has been treated with every form of treatment available to medical science but has had no response to now.  She has overwhelming pelvic pain which has to be supported with chronic use of narcotic analgesics.  I feel that her prognosis is very poor.  As new treatment regimes become approved, she will undoubtedly be tried on these.  However, at the present time, I am not very optimistic that any of these will work.

Dr. Busby invited LINA to contact him if it had any additional questions about Plaintiff or her prognosis.  Tr. 115. There is no indication that LINA did so.

## F. First Appeal of LTD Denial

Counsel for Plaintiff also submitted a second letter that addressed the November 10, 2008 denial of LTD benefits.  He wrote: "This is an appeal from your decision." This December 1, 2008 appeal was well within the time permitted to appeal.  Counsel attached the same report from Dr. Busby that he used to support the appeal of the STD claim.  Tr. 214-15.

## G. LINA's Response

Mr. Hornung issued a letter on December 5, 2008 that acknowledged receipt of a December 1 letter from counsel and the updated narrative from Dr. Busby.  He advised that

the additional information would not change the previous adverse determinations, so he would "not be able to accept a request for a voluntary appellate review." He stated that he would be willing to review any additional clinical medical evidence from the relevant time, which may consist of "additional office/progress notes from Dr. Busby, any diagnostic testing, any prescribed medication regime, any referrals to specialists and/or any clinically supported limitations/restrictions on your work abilities from January 2008 ongoing." He added that "pathology alone does not necessarily equate to a presence of a disabling condition or a decreased level of functionality." Mr. Hornung stated that Plaintiff still had 180 days from receipt of the July 28 re-denial of the STD claim to file a voluntary appeal review. He estimated the deadline for that step to be around February 1, 2009. Tr. 111-12. The references in Hornung's letter to the STD claim suggests that his letter addressed only that claim.

It is not clear whether Hornung considered counsel's December 1 letter to have commenced the second-step STD appeal or to have requested some other form of administrative remedy. Hornung did not explain what he meant by not accepting a request for voluntary review, and the attorneys have not pointed to any provision in the plan that contemplates such a procedure or that would shed light on Hornung's remark. Perhaps Hornung was trying to take some procedural advantage of counsel's request in the STD letter that he "requests review of your earlier decision," as opposed to a more direct statement like that found in the LTD letter that, "This is an appeal from your decision." The record does not

reveal a clear answer, and the attorneys have not spoken to the issue in their briefs. It appears that counsel's letter should have reasonably completed the appellate review process with regard to STD benefits, albeit using the 180-day time limits that Mr. Hornung repeatedly stated were applicable.  Plaintiff filed this lawsuit less than two weeks later.

**Proper Defendant; STD Claim**

The named defendant in this case is LINA, but many of the plan provisions refer to CIGNA in the administrator role, and most of the relevant correspondence denying claims comes from CIGNA.  The corporate disclosure statement filed by LINA reveals that it is wholly owned by CIGNA Corporation.  There has been no objection by LINA that Plaintiff's claims should be directed to CIGNA, and LINA has defended this case as if it was the party who administered the claim.  LINA's submissions appear to be a judicial admission in that respect.

LINA has, however, argued for other reasons that it is not a proper defendant to the claim for STD benefits.  It suggests that the only proper defendant on a claim for STD benefits is the STD plan itself. LINA says that it was a mere third-party administrator of claims under the STD plan, with no control over it.

This argument relies on the provisions in the STD plan that is attached to LINA's memorandum.  Plaintiff objects to the reliance on evidence from outside the stipulated administrative record, but there does not appear to be any STD plan in the record to which Plaintiff stipulated.  Absent establishment of the existence and terms of an STD plan, there

can be no viable claim for STD benefits. Plaintiff may wish to reconsider her position on this issue unless she can point out an STD plan in the stipulated record. Plaintiff has not challenged the authenticity of the plan submitted by LINA with its memorandum, so the court will accept it as an addendum to the administrative record.

Some cases do hold that the only proper defendant for an ERISA claim to recover benefits is the plan itself.  Others allow that an administrator of the plan may be a proper defendant, and some cases allow a claim to be directed at the plan administrator but not a mere claims administrator.  See Ford v. MCI Communications Corporation Health and Welfare Plan, 399 F.3d 1076, 1081-83 (9th Cir. 2005); Haydel v. Health Smart Benefit Solutions, Inc., 2009 WL 2856330 (E.D. La. 2009); and Johnson v. Hartford Life & Accident Ins. Co., 2009 WL 540959 (S.D. Tex. 2009) (noting circuit split). The Fifth Circuit has not strictly followed the "sue the plan only" approach. It has, for example,  permitted a claim against an employer directly when the employer was responsible for paying benefits. See Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339 (5th Cir. 2003) and Wilson v. Kimberly-Clark Corp., 254 Fed. App'x. 280, 285 (5th Cir. 2007). The parties have not cited a controlling decision that would direct the outcome of this issue in this case.

The plan in this record does not in its definitions provide a name for itself, but the name on the cover of the document is "Buffets, Inc. and its Subsidiaries Short-Term Disability Plan."  The plan provides in separate provisions that it is "administrated" by CIGNA (LINA) and that claims for benefits must be approved by CIGNA (LINA), after

which they will be paid by the employer.  It appears LINA was no mere claims manager but is also the administrator of the plan itself.

It is recommended that the court find that LINA is a proper defendant with respect to the STD benefits claim.  If the court disagrees and chooses to follow those decisions that have held that the only proper defendant is the plan, Plaintiff should be permitted an opportunity to amend her complaint to name the plan itself as a defendant.  There is no indication that this amendment would cause surprise or prejudice to the plan, the interests of which have been defended throughout this litigation by its administrator. An appeal of a denial of disability benefits, which is a very important issue to most claimants, should not be avoided by the courts based on such a form-over-substance argument, absent a reasonable opportunity for the claimant to correct any technical error.

**Exhaustion of Administrative Remedies**

LINA argues that Plaintiff did not pursue a second administrative appeal with respect to her claim for STD benefits before she filed this suit, thus barring her claim for failure to exhaust administrative remedies. LINA also argues that the lack of exhaustion of the STD claim is fatal to the LTD claim because it renders Plaintiff unable to demonstrate that she was disabled during the 180-day waiting period under the LTD plan.

LINA does not address the December 1, 2008 letter that counsel for Plaintiff sent Mr. Hornung to request review of the first-appeal decision.  The letter was sent outside the 60-day period allowed by the terms of the plan, but it was within the 180 days that

Mr. Hornung clearly stated in his letter were allowed for a second appeal.  Mr. Hornung's response declined to "accept a request for a voluntary appellate review" but did not raise any objection to the timeliness of the request.  Rather, he rejected the submission for lack of perceived merit.

Failure to exhaust administrative remedies is generally held to be an affirmative defense, the burden of which is on the defendant.  A plaintiff is not required to demonstrate exhaustion.  See Jones v. Bock, 127 S.Ct. 910, 921 (2007) (interpreting exhaustion statute applicable to prisoner suits). Courts have similarly held that a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense. Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435, 446 (2d Cir. 2006); Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 279 (3d Cir. 2007).

LINA has not met its burden of demonstrating to the court that Plaintiff failed to exhaust her available administrative remedies.  The record includes evidence that Plaintiff, through counsel, did pursue the second step appeal, and LINA has not even addressed that evidence. To the extent LINA might argue (which it has not done yet) that Plaintiff's second appeal was untimely under the terms of the plan, the court has the authority to estop LINA from asserting an exhaustion defense because the administrator misled Plaintiff about the time permitted to lodge the second appeal.  See Bourgeois v. Pension Plan, 215 F.3d 475 (5th Cir. 2000).

**Merits of the STD Claim**

The STD plan provides that the case manager shall have the power to determine all questions arising in connection with the administration, interpretation, and application of the plan.  The plan states that the "Company" shall have "all discretionary authority to accomplish his duties under this Plan," but it is obvious that the reference to Company was intended to be to the case manager, who is the subject of every other aspect of the lengthy paragraph that is titled: "Powers, Duties and Responsibilities of the CIGNA Case Manager."

When a plan gives such discretionary authority, the court is to reverse the plan administrator's denial of benefits only if the administrator abused its discretion.  Holland v. International Paper Company Retirement Plan, 576 F.3d 240, 246 (5th Cir. 2009). A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for his denial.  Id.  The court should reach a finding of abuse of discretion only where the administrator acted arbitrarily or capriciously.  Id.  A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.  Id.  The court's review need only assure that the administrator's decision falls somewhere on a continuum of reasonableness -- even if on the low end.  Id. at 247.  Stated another way, "the Administrator's decision must be supported by substantial evidence in the administrative record, which is evidence that a

reasonable mind might accept as sufficient to support a conclusion." Wade v. Hewlett

Packard Development Co LP Short Term Disability Plan, 493 F.3d 533, 541 (5th Cir. 2007).[1]

The only medical evidence in the record comes from Plaintiff's treating physician,

Dr. Busby.  Based on his reports and records, LINA had before it the following facts:

# Plaintiff was diagnosed with chronic interstitial cystitis, a condition that her physician said is characterized by extreme and acute bladder and urethral pain.

# Dr. Busby has treated Plaintiff for the condition since July 2004.

# Plaintiff had several visits to Dr. Busby in 2007 for treatment of the cystitis.

# There is evidence that Plaintiff falsely claimed to have an office visit in January 2008 and an appointment in February 2008.  There is no evidence that Plaintiff made any office visits since December 2007.

# Hydrodilation treatment did not relieve symptoms.

# A urethral sling procedure improved but did not eliminate a problem with stress urinary incontinence.

# Treatment with medications have been ineffective.  The only way to relieve Plaintiff's pain is through increasing dosages of Dilaudid or other narcotic pain medications.

# Dr. Busby stated that the narcotic pain medications severely limit Plaintiff's ability to perform meaningful tasks and cause drowsiness.

# Dr. Busby has stated clearly in writing that he believes Plaintiff was not capable of working beginning October 25, 2007 or afterward.  He attributes this to Plaintiff's overwhelming pelvic pain that has to be treated with narcotics.

---

[1] Plaintiff has not argued that the administrator has a conflict of interest that might be a factor in determining whether an abuse of discretion occurred. See Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343 (2008) (addressing the effect of conflicts).

In ERISA disputes, courts may not require administrators to automatically accord special weight to the opinions of a treating physician.  The court also may not impose on an administrator a discrete burden of explanation if the administrator credits reliable evidence that conflicts with a treating physician's evaluation. <u>Black & Decker Disability Plan v. Nord</u>, 123 S.Ct. 1965 (2003).  That being said, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." <u>Id.</u>; <u>Holland</u>, 576 F.3d at 249-50.

This is not a case where there is competing medical evidence that contradicts the findings and opinions of the treating physician, and the administrator chose one professional medical opinion over that of another.  There is a single medical source in the evidence, and he is adamant that Plaintiff has been subject to a condition since October 2007 that causes her serious pain, does not permit her to work, and is incapable of relief at this time by any known medical treatment.  There is no affirmative evidence that the administrator can point to that clearly supports a basis for denial or that provides substantial evidence to find that Plaintiff could work.  All of the medical evidence in the record indicates that Plaintiff could not, during any of the relevant time, perform the material and substantial duties of her regular occupation or a comparable position.

The definition of disabled under the STD plan also requires that the employee be under the regular care and attendance of a licensed medical provider.  LINA did note in its records the lack of office visits in January and February 2008, but it did not in its written decisions

suggest that it denied the claim based on a lack of "regular care and attendance of a licensed medical provider."  That term does not appear to be further defined in the STD plan. Dr. Busby stated in his report that he has been treating Plaintiff regularly since 2004.  The court does not believe that it is necessary that Dr. Busby actually see Plaintiff in his office every month to satisfy the regular care requirement.  The record suggests that Dr. Busby was prescribing medications for Plaintiff even during the times when she had not been to his office for some weeks. It is not necessary that a patient, for whom medical science offers no effective treatment, traipse to her physician monthly for a waste of time. Many health or physical conditions do not require frequent visits to a physician, but they are no less disabling.  Given Plaintiff's diagnosis and prognosis, the record reflects that Plaintiff received sufficient "regular care and attendance" from Dr. Busby to satisfy the terms of the plan.

LINA may point to what appears to be Plaintiff's misrepresentations about an office visit and another scheduled office visit. But any such misrepresentations do nothing to undermine the later unrebutted opinions from Dr. Busby that Plaintiff was disabled in October 2007 and continued to be disabled thereafter.  LINA's written decisions appear to base denial on the absence of specific evidence in the record of the precise deficits in Plaintiff's abilities caused by her diagnosed condition.  It is true that a mere diagnosis such as heart disease, degenerative disc disease, cystitis, or diabetes does not render one disabled.  The condition must also result in limitations that prevent a person from performing the duties of their

occupation. Physicians will sometimes complete functional capacity assessment evaluations that opine as to the patient's ability to lift and carry weight, stand during a typical work day, bend, work at heights, and engage in other job-related functions.  There was no such assessment in this record, but LINA appears to rely on the mere absence of such assessments to justify its conclusion.  To that extent, LINA is acting arbitrarily and capriciously.  The treating physician gave uncontested evidence that Plaintiff's severe pain prevents her from performing her prior work.  It was not necessary in the context of this case that he also assess in more detail Plaintiff's job-related abilities and limitations such as regarding lifting, standing, and the like.  If LINA believed that such detailed findings were important to its decision, it should have taken advantage of Dr. Busby's offer and contacted him for the information that it believed was required.

The undersigned has reviewed the medical evidence of record and finds that all of it supports Plaintiff's claim that she is disabled because she cannot perform the material and substantial duties of her regular occupation or a position comparable to it, and she is under the regular care and attendance of a licensed medical provider.  There is no contrary medical evidence.  Claimants have prevailed in litigation in similar settings.  In Roig v. The Limited Long-Term Disability Program, 2001 WL 1267475 (5th Cir. 2001), the claimant submitted a claim for disability benefits that was supported by her treating physician's statement that the claimant was disabled due to spine problems.  The plan initially denied the claim because records indicated the treating physician did not see the claimant in his office after a certain

date.  The claimant requested review and provided a letter from her physician that clarified that she had been under the physician's care during the relevant time, and the physician opined again that claimant could not return to her job.  The plan denied the claim again.  The district court reversed that decision, and the Fifth Circuit affirmed.  The Court noted that the plan administrator did not bother to interview the physician or order an independent medical examination, so it had no evidence to refute the conclusion of the treating physician.  This case is remarkably similar, and the same result should follow.

The appropriate result in this case is to grant Plaintiff's motion for summary judgment in part by ordering LINA to approve Plaintiff's claim for STD benefits.  The court should not, however, address the merits of the claim for LTD benefits.  That claim has not been addressed on the merits by the plan administrator, due to the rejection of the requisite finding of short-term disability, so the claim was never exhausted under the provisions of the plan. In such a setting, the court should not be the first to address the LTD claim on the merits. Rather, it should remand the LTD claim to the plan administrator.  See Roig, 2001 WL 1267475, *4, citing Schadler v. Anthem Life Insurance Co., 147 F.3d 388 (5th Cir. 1998).

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 14) be **granted in part** by finding that LINA abused its discretion when it denied the claim for STD benefits.  LINA should be ordered to immediately take steps necessary to approve the payment of the full amount of the STD benefits available to Plaintiff under the STD plan.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claim for LTD benefits be remanded to LINA for consideration on the merits and so that Plaintiff may exhaust all available administrative remedies with respect to that claim.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of October, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE